**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROYAL DOUGLAS ROBINSON,** | ) | |
| **ID # 02066342,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:19-CV-2593-C-BH** |
| | ) | |
| **JIMMY S. SMITH, Senior Warden,** | ) | |
| **DIRECTOR, Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondents.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on November 1, 2019 (doc. 3), should be **DENIED** with prejudice, and the petitioner's *Motion for Summary Judgment*, received on March 31, 2022 (doc. 57), should also be **DENIED**.

## I.    BACKGROUND

Royal Douglas Robinson (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2016 conviction and sentence of life without parole. (*See* doc. 3 at 2.) He names the Warden of his place of incarceration and the Director of TDCJ-CID as the respondents (collectively, Respondent). (*See id.* at 1.)

### A.    State Court Proceedings

In January 2016, Petitioner was indicted for capital murder by terror threat/other felony in Case No. F16-00017-U in the 291st Judicial District Court of Dallas, Texas. (*See* doc. 16-31 at

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

4.)  He pleaded not guilty and proceeded to trial in April 2016.  (*See id.* at 5, 16.)  A jury found him guilty, and the state trial court sentenced him to life imprisonment without the possibility of parole on April 14, 2016.  (*See id.* at 15-16.)  The judgment was affirmed on appeal.  (*See* doc. 16-3); *Robinson v. State*, No. 05–16–00449–CR, 2017 WL 2264823 (Tex. App.—Dallas May 24, 2017, pet. ref'd).  On September 13, 2017, the Texas Court of Criminal Appeals refused his petition for discretionary review (PDR); his request for a rehearing on the PDR was denied on October 25, 2017.  (*See* doc. 16-15).

Petitioner's state habeas application, signed on May 9, 2018, was received by the trial court on May 17, 2018.  (*See* doc. 16-31 at 20-53; doc. 16-32 at 1-25.)  His trial counsel submitted an original and an amended affidavit in response to the claims raised in the state habeas application. (*See* doc. 16-33 at 26-29, 33-36.)  On December 3, 2018, the state trial court issued findings of fact and conclusions of law recommending that Petitioner's state habeas application be denied. (*See* doc. 16-33 at 43-59; doc. 16-34 at 1-21.)  On December 19, 2018, the Texas Court of Criminal Appeals denied the state habeas application without written order on the findings of the trial court without a hearing.  (*See* doc. 16-30.)

**B.**    **Substantive Claims**

The § 2254 petition asserts the following grounds for relief:

(1) Out of time appeal. 14th U.S. Constitutional Amendment 6th U.S. Constitutional Amendment;

(2) Juror Misconduct 6th U.S. Constitutional Amendment;

(3) Brady Claim (withholding evidence) 6th and 14th U.S. Constitutional Amendments;

(4) Perjury 14th U.S. Constitutional Amendment;

(5) Right to trial by an impartial jury 6th U.S. Constitution Amendment;

(6) Improper exclusion of evidence 14th U.S. Constitution Amendment;

(7) Conflict of interest 6th and 14th U.S. Constitution Amendments;

(8) Professional misconduct 6th and 14th U.S. Constitution Amendments;

(9) No evidence 14th U.S. Constitutional Amendment;

(10)    Actual innocence 14th U.S. Constitutional Amendment; and

(11)    Ineffective assistance of counsel 6th and 14th U.S. Constitutional Amendments.

(doc. 3 at 6-7, 11-13.)[2]   On April 7, 2020, Respondent filed a response in which it argued only that the petition was time-barred.  (*See* doc. 15.)  Petitioner objected to the response on June 1, 2020.  (*See* doc. 21.)  Respondent's court-ordered supplemental response addressing Petitioner's objection and the merits of his § 2254 claims was filed on February 10, 2021.  (*See* docs. 27, 36.) Petitioner filed a reply on March 26, 2021.  (*See* doc. 41.)  On December 9, 2021, Respondent refiled the supplemental response, in which he conceded that the petition was not time-barred. (*See* docs. 49-50.)

## II.    APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[2] Because resolution of some grounds for relief may impact some of the remaining claims, they are considered in an order different than presented by Petitioner.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142,149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III.    EXHAUSTION AND PROCEDURAL BAR

Respondent contends that several of Petitioner's claims are unexhausted and procedurally barred. (*See* doc. 50 at 2-5, 9-14, 22-23; *see also id.* at n. 5, 7-9.)

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust under § 2254, he must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a PDR or a state application for a writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. A petitioner must also present his claims in a procedurally correct manner. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001) (quoting *Deters*, 985 F.2d at 795).

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition to be procedurally barred).

Here, Petitioner did not raise all of his claims either on appeal, in a PDR, or in his state habeas application, so they are unexhausted. He would be barred from raising these claims in a successive state habeas application, so those claims are also procedurally barred from federal habeas review. *See Nobles*, 127 F.3d at 423. The Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or

counsel in that proceeding was ineffective," however. *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). "A 'substantial' claim is one that has 'some merit.'" *Ibarra v. Davis*, 786 F. App'x 420, 423 (5th Cir. 2019). "An insubstantial claim is one which 'does not have any merit' or 'is wholly without factual support.'" *Id.* Accordingly, as to Petitioner's claims of ineffective assistance of counsel, determination of the merits of both the exhausted and unexhausted claims is required.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his first, seventh, and eleventh grounds, Petitioner contends that his appellate and trial counsel, respectively, rendered ineffective assistance. (*See* doc. 3 at 1, 11, 13.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

7

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the petitioner must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."

*Phillips*, 210 F.3d at 348.

## A.    **Trial Counsel**

In his thirteenth ground, Petitioner lists several claims of ineffective assistance of trial and appellate counsel.  (*See* doc. 3 at 11; doc. 10 at 23-24.)  In his seventh ground, Petitioner also appears to contend that trial counsel rendered ineffective assistance based on a conflict of interest. (*See* doc. 3 at 11.; doc. 10 at 15-16.)

### *1.   Uncalled Witnesses*

Petitioner contends that counsel "failed to subpoena witnesses, relied on state to contact them then denied having knowledge of witnesses to contact for [Petitioner]."  (doc. 10 at 23 (citations to record omitted).)  He argues that counsel failed to subpoena Bernard Partee (Partee), the alleged property owner where Petitioner was living at the time of the offense, and as a result, "jurors were unaware that the location of [Petitioner's] vehicle (6700 Patrol Way, Dallas TX 75241), the [victim's] home (6818 Old Ox, Dallas TX 75241), and [Petitioner's] residence (6137 Songwood, Dallas TX 75241) was [sic] all in the same 'Singing Hills' neighborhood."  (*Id.* at 8.) Petitioner also references a conference at trial during which counsel requested that the prosecution have "the fingerprint, the lady who compared the exhibits" available to testify.  (doc. 16-23 at 16; *see also* doc. 10 at 9.)  He complains that "residue expert Krista Michael whos [sic] findings contradicted the states [sic] claim of [Petitioner] wearing gloves, was not" subpoenaed by counsel and the residue report was not introduced, and he also argues that counsel failed to subpoena "expert Dr. Robert C. Benjamine [sic]" and the "unnamed person who Detective David said found [the victim's] cell phone in [Petitioner's] pocket.".  (doc. 10 at 9, 24.)

In his state habeas application, Petitioner raised a claim as to counsel's alleged failure to subpoena and call Partee at trial.  (*See* doc. 16-31 at 46.)  Counsel's affidavit stated, "After

9

interviewing Mr. Partee, we determined that Mr. Partee's testimony would be of no assistance in this case.  [. . . Petitioner] was advised that Mr. Partee had no information that would assist in the defense of [Petitioner's] case." (doc. 16-33 at 34.)  In recommending that the claim be denied, the state habeas court found that counsel's affidavit was credible, and that Petitioner failed to present any affidavits showing that Partee's testimony would have been favorable.  (*See* doc. 16-34 at 3.)  The Texas Court of Criminal Appeals rejected the claim on these findings when it denied the habeas application.  (*See* doc. 16-30.)  Petitioner's claims regarding other uncalled witnesses are unexhausted.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).  In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Id.*; *see also Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).  Petitioner has failed to meet this burden.

Aside from his own conclusory assertions, which are insufficient to entitle him to § 2254 relief, Petitioner has failed to provide any facts or evidence demonstrating that the uncalled witnesses were available to testify and would have testified, the content of their proposed testimony, and that any such testimony would have been favorable to a particular defense.  He has also failed to show a reasonable probability that the outcome of the trial would have been different even if counsel had been deficient for failing to subpoena the uncalled witnesses as alleged.  *See*

10

*Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001); *United States v. Cockrell*, 720 F.2d 1423, 1427-28 (5th Cir. 1983). Because Petitioner has not satisfied his burden under *Strickland*, he has failed to show that the state habeas court's rejection of his claim as to Partee was unreasonable, and his unexhausted claims as to the other uncalled witnesses are not substantial ones that excuse the procedural bar. *See Ibarra*, 738 F. App'x at 817. The claims should therefore be denied.

### 2. *Impeachment of State Witness*

In an unexhausted claim, Petitioner contends that counsel failed to impeach Petitioner's ex-wife, Catherine Harris, "whos [sic] testimony supported kidnapping, for her prior Dallas County felony conviction", "although [counsel] admitted checking criminal records on all witnesses." (doc. 10 at 8; *id.* at 23.)

Petitioner does not provide any evidence to show his ex-wife's alleged prior felony conviction, or offer any argument or evidence to show that it would have been admissible for impeachment purposes at trial. Regardless, even assuming for purposes of this motion only that counsel rendered deficient performance by failing to impeach the ex-wife with a prior felony conviction as alleged, *Strickland* also requires a showing of prejudice. To show prejudice, Petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. *Strickland*, 466 U.S. at 694. Petitioner offers no facts or evidence beyond conclusory allegations to demonstrate a reasonable probability that the result of his trial would have been different absent counsel's alleged deficiency. Conclusory allegations and speculation are insufficient to establish prejudice. *See Miller*, 200 F.3d at 282 ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to

raise a constitutional issue."). Because he has not shown prejudice under *Strickland*, this unexhausted claim is without merit and is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817. The claim should be denied.

### 3. Identification of Prospective Jurors

In an unexhausted claim, Petitioner contends that counsel "failed to identify prospective jurors during voir dire questioning." (doc. 10 at 23.) He appears to claim that counsel "refused to identify prospective jurors as they answered questions over 378 times during his examination." (*Id.* at 16.) Petitioner also recites responses to inquiries during voir dire by venirepersons who were selected as jury members. (*See id.* at 10-11.) He does not otherwise develop this claim or explain how counsel allegedly "failed to identify prospective jurors." (*Id.* at 23.) He has failed to show that counsel's performance was deficient, or any resulting prejudice under *Strickland*. Because this ineffective assistance of counsel claim is without merit, it is not a substantial claim that excuses the procedural bar, and it should be denied. *See Ibarra*, 738 F. App'x at 817.

### 4. Disqualification of Juror

In an unexhausted claim, Petitioner contends that counsel failed "to disimpanel [sic] Juror Leonora Gjemnica for being biast [sic]." (doc. 10 at 23.) He argues that "when asked to consider the full range of punishment if determined [Petitioner] was guilty of a lesser-included offence [sic], Juror Leonora Gjemnica agreed that 25 years was 'pretty short' and she could not comply with the full sentencing range." (*Id.* at 10 (citations to record omitted).)

The record shows that the prosecution asked during voir dire whether anyone felt "that they cannot give full and fair consideration to 25 years to 99 years or life for two prior felony life convictions? And as I said, these can be two—two of any felonies." (doc. 16-23 at 130.) The following exchange between another venireperson and the prosecution took place:

VENIREPERSON: I'm concerned that I wouldn't be – be okay with that short range, with – with this being the third time this person would be convicted of a felony, if I'm understanding the scenario correctly. In other words, this person has proven to be a bad actor of society, they have proven that they're violent with weapons and 25 seems like a really short amount of time for that person.

[PROSECTION]: Okay. Now, like I say, it could be any felony conviction. So if you got two felony thefts of $20,000 or more and say you commit a murder, now, your punishment is 25 to life. Or it you [sic] could be you have two prior murder convictions. So it's two – two of any felonies. So it doesn't necessarily have to be violent felonies or –

VENIREPERSON: So they're a convicted murderer and they've got two other felony charges?

[PROSECUTION]: Yes.

VENIREPERSON: They are?

[PROSECUTION]: Yes.

VENIREPERSON: 25 seems pretty short there.

(doc. 16-23 at 130-31.) Afterwards, venireperson Leonora Gjemnica, who was later selected as a juror (Juror Gjemnica), stated, "I agree with him as well," referring to the venireperson in the exchange. (*Id.* at 131.)

Even assuming for purposes of this motion only that counsel rendered deficient performance by failing to challenge Juror Gjemnica as alleged, Petitioner has failed to show prejudice. Petitioner was convicted of capital murder, which mandated a life sentence without the possibility of parole; he was not convicted of the lesser-included offense of murder with two prior felonies, so he was not subject to the range of punishment with which he claims Juror Gjemnica could not comply. He has not shown a reasonable probability that the outcome of his trial would have been different absent counsel's alleged deficiency. *See, e.g.*, *King v. State*, 953 S.W.2d 266, 268 (Tex. Crim. App. 1997) ("Because [the defendant] was convicted of capital murder, any error relating to the punishment range of the lesser-included offense of murder made no contribution to

13

[the defendant's] conviction or punishment."). Because Petitioner has failed to satisfy the second prong of *Strickland*, his claim is without merit and is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817. The claim should be denied.[3]

### 5. Admission of Killing

In an unexhausted claim, Petitioner contends that counsel failed "to advocate for [Petitioner] by stating, '[Petitioner] . . . killed [the victim]." (doc. 10 at 23.) He argues that counsel "incriminated [Petitioner] by stating in his opening statement, '[Petitioner] was trying to get that gun . . . fortunately for him he was successful' 'and . . . [the victim] was shot in the leg' and 'he killed [him]." (*Id.* at 21(citations to the record omitted).) He also argues that the prosecution "subsequently used [counsel's] admission of guilt which [Petitioner] wasnt [sic] in agreement with, to support its claim that 'this was basically going to be an execution' because 'he shot him in the leg, he shot him . . . in the chest.'" (*Id.* (citations to record omitted).)

Here, the state habeas court found that there was "substantial" evidence against Petitioner which specifically showed:

> (1) the [Petitioner] and victim did not get along and that the [Petitioner] previously sent text messages to his ex wife [sic] threatening to blow the victim's brains out if he got a second chance [ ]; (2) testimony from witnesses relating that the victim would never have freely allowed the [Petitioner] in his car [ ]; (3) testimony that the police found [Petitioner's] car parked near the victim's home [ ]; (4) testimony that the [Petitioner] was seen in the victims [sic] backseat holding the barrel of gun toward the victim as they struggled over the gun when the gun went off [ ]; (5)

---

[3] To the extent Petitioner contends that Juror Gjemnica was biased based on her responses to voir dire questioning, his claim is unsupported by the record. Regarding a venireperson's ability to consider the full range of punishment of an offense in Texas, the "question is not whether the prospective jurors are willing to consider the entire range of punishment for the offense as the defendant committed it, but whether the juror can consider the entire range of punishment for the offense as defined by law." *Perez v. TDCJ-CID*, No. 6:18cv255, 2020 WL 4549187, at *16 (E.D. Tex. Mar. 31, 2020) (citing *Rosales v. State*, 4 S.W.3d 228, 233 (Tex. Crim. App. 1999)). Here, Juror Gjemnica's agreement with the venireperson does not establish that she "agreed. . . she could not comply with the full sentencing range," as alleged by Petitioner. (doc. 10 at 10.) Rather, it shows only that she agreed that 25 years' imprisonment sounded "pretty short" for the hypothetical presented, namely, "a convicted murderer and they've got two other felony charges." (doc. 16-23 at 131.) Based on the state habeas record, Petitioner has not demonstrated that Juror Gjemnica could not consider the full range of punishment for the lesser-included offense of murder, and he has not shown that she was biased.

testimony that after the crash, the gun and one cartridge case were found under the rear portion of car near [Petitioner] who had suffered a broken leg in the crash and was found at the scene [ ]; and (6) testimony that paper had been placed over the victim's peephole the day of the killing to conceal the perpetrators [sic] identity.

(doc. 16-34 at 14.)  The defense's theory of the case was that Petitioner "killed his abductor, his kidnapper, and his assailant in self-defense," so he was not guilty of capital murder or murder.[4] (doc. 16-24 at 15; *see also* doc. 16-20 at 42.)  Petitioner also claims that he acted in self-defense, but appears to argue that, while he and the victim struggled for the gun, either the gun discharged twice on its own, or the victim shot himself in the leg and then in the chest.  (*See* doc. 16-32 at 20; doc. 41 at 4-5.)

Even assuming for purposes of this motion only that counsel rendered deficient performance by stating that Petitioner killed the victim in self-defense, Petitioner must also show *Strickland* prejudice.  In the state habeas proceedings and in his reply, Petitioner stated that he reached for the victim's hands because the victim was holding the gun, resulting in two separates struggles during which the gun went off.  Considering the substantial evidence against him, and the lack of testimony and evidence to support his theory, he has not shown a reasonable probability that the result of his trial would have been different had counsel not argued that Petitioner shot the victim in self-defense and instead argued that the gun discharged on its own, or that the victim shot himself during the struggle for the gun.  He has failed to satisfy his burden to show *Strickland* prejudice, and he has not established that counsel was ineffective.  His claim is not a substantial one that excuses the procedural bar, and it should be denied.

### 6.  *Composition of Jury*

Petitioner contends that counsel "failed to object to there being no black male jurors." (doc.

---

[4] Petitioner's § 2254 filings omit the portion of counsel's statement that Petitioner killed the victim in self-defense. (*See, e.g.*, doc. 10 at 15.)

10 at 23.)   He argues that "there were no black males in the jury and such exemption unconstitutionally violated the "fair cross-section" requirement of the Sixth and Fourteenth Amendment [sic]."[5]  (doc. 10 at 11.)

Petitioner raised this claim in his state habeas application, and the Texas Court of Criminal Appeals rejected it when it denied the state application.  (*See* doc. 16-30; doc. 16-32 at 15.)

The Supreme Court has held that the Sixth Amendment right to a jury trial, made applicable to the states through the Fourteenth Amendment, requires that the jury be selected from a representative cross-section of the community.  *Taylor v. Louisiana,* 419 U.S. 522, 528-29 (1975). Jury venires must not systematically exclude distinctive groups in the community. *Duren v. Missouri,* 439 U.S. 357, 363-64 (1979).  In order to establish a *prima facie* Sixth Amendment fair cross-section violation, a petitioner must show that: (1) the group that was alleged to have been excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of this group in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.  *Id.* at 364.  The Fifth Circuit has recognized that African-Americans are a distinctive group in the community.  *See McGinnis v. Johnson*, 181 F.3d 686, 690 (5th Cir.1999). The Supreme Court has noted that the Sixth Amendment does not require petit juries, as opposed to panels or venires, to reflect the composition of the community at large, however.  *Lockhart v. McCree,* 476 U.S. 162, 173 (1986).

Here, Petitioner has failed to provide any facts or evidence beyond conclusory allegations to show that the representation of African-Americans in venires from Dallas County was not fair

---

[5] In his state habeas application, Petitioner claimed that "the African American male was systematically excluded from my selecte [sic] jury," but he did not raise the claim in the context of the alleged ineffective assistance of counsel. (doc. 16-31 at 29.)

and reasonable in relation to the number of African-Americans in the community, and that any such underrepresentation was due to systematic exclusion. Nor has he established that the procedure used to select people for jury service was susceptible to abuse and/or not race neutral. His conclusory allegations are insufficient to raise a constitutional claim in this habeas proceeding. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). He has not shown a legitimate basis upon which counsel could have objected to the absence of black male jurors on his jury. Because counsel is not deficient for failing to make a meritless argument, Petitioner has not satisfied the first *Strickland* prong. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."). He also has failed to allege facts or evidence to demonstrate *Strickland* prejudice. Petitioner has failed to show that the state habeas court's rejection of this claim was unreasonable, and the claim should be denied.

### 7. *Christian Scripture*

Petitioner contends that counsel "failed to ensure an impartial jury by quoting Christian scripture." (doc. 10 at 23.) He claims that counsel's quotes from the Bible during opening statements "influenced jurors to 'passionately' render their verdict in a religious manner instead of in accordance with the evidence and the law. The verse in the bible immediately following the verse [counsel] quoted says, 'casting the lot settles disputes and keep [sic] strong apponents [sic] apart' which defines [counsel's] verse, for jurors to render their verdict by lot." (*Id.* at 13 (citations to the record and footnote omitted).) He further claims that "although its [sic] mentioned countless times in the bible to kill a person accused of murder, [counsel] instructed jurors to determine [Petitioner's] fate by 'casting a lot.'" (*Id.* (citations omitted).) He argues that he must be granted

a new trial "'when the verdict has been decided by lot or in a manner other than a fair expression of the jurors [sic] opinion.'"  (*Id.* (citing Tex. R. App. P. 21.3(d).)

Petitioner raised various iterations of this claim in his state habeas application.  (*See* doc. 16-31 at 26, 28, 30, 32, 34, 39; doc. 16-32 at 7-8, 15.)  Counsel's affidavit stated that co-counsel "did not demand the jury decide this case according to scripture he quoted."  (doc. 16-33 at 33.)  In recommending denial of the repetitive claims, the state habeas court found counsel's affidavit testimony that Petitioner's "claims are false to be credible and supported by the record[,]" and the allegation that "counsel's biblical reference urged jurors to decide the case on biblical grounds instead of the law to be non credible [sic] and not supported by any citations to the record by [Petitioner]."  (*Id.* at 50, 54.)  The Texas Court of Criminal Appeals denied this claim on these findings when it denied the state habeas application.  (*See* doc. 16-30.)

Aside from conclusory allegations and speculation unsupported by the record, Petitioner has provided no facts or evidence showing that the jury was impartial due to counsel's quoting of scripture or that it determined the verdict by lot.  He has not shown that counsel's performance was deficient or resulting prejudice under *Strickland*.  Because he has not shown that counsel rendered ineffective assistance by quoting the Bible, he has failed to show that the state habeas court's rejection of this claim was unreasonable.  The claim should be denied.

### 8.  *Witness in Courtroom*

In an unexhausted claim, Petitioner contends that counsel "failed to object to states [sic] witness Kimble remaining inside the courtroom."  (doc. 10 at 23.)  He appears to argue that allowing the victim's mother to remain in the courtroom after her testimony "barred re examination [sic] concerning the address of [the victim's] ex girlfriends [sic] mother."  (*Id.* at 17.)

The record shows that after defense counsel cross-examined the victim's mother at trial,

he objected to her being permanently excused, to which the trial court stated, "Okay. You realize that she's going to sit in the courtroom?" (doc.16-24 at 30.) Defense counsel then requested to approach the bench, and following a discussion off the record, the trial court told the victim's mother that she could step down. (*See id.*)

Even assuming for purposes of this motion only that counsel rendered deficient performance by failing to object to the presence of the victim's mother in the courtroom after her testimony as alleged, Petitioner must also show prejudice under *Strickland*. Beyond conclusory allegations and speculation, he offers no facts or evidence to demonstrate a reasonable probability that the result of his trial would have been different absent counsel's alleged deficiency. Because conclusory allegations and speculation are insufficient to establish prejudice, he has not satisfied his burden under *Strickland*. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042. This unexhausted claim is without merit and is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817. It should be denied.

### 9.  *Text Messages*

In some of his unexhausted claims, Petitioner contends that counsel was ineffective regarding text message evidence presented at trial.[6] (*See* doc. 10 at 23.) He claims that counsel failed to: (1) "present text message from [the ex-wife] requesting gun for protection against [the victim]"; (2) "argue that text message # 3946 and 3929 didnt [sic] identify [Petitioner]"; and (3) "present text message sent to [Petitioner] from [the ex-wife] on March·19·2015, requesting he came [sic] to her home on March·20·2015 at 5:30." (*Id.*)

Assuming for purposes of this motion only that counsel rendered deficient performance

---

[6] In his state habeas application, Petitioner raised an ineffective assistance of counsel claim relating to text messages, but on different grounds than the ones raised in this § 2254 proceeding. (*See* doc. 16-31 at 41-42.)

regarding the text messages as alleged, *Strickland* also requires a showing of prejudice. To show prejudice, Petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficiency. *Strickland*, 466 U.S. at 694. He offers no facts or evidence beyond conclusory allegations to demonstrate a reasonable probability that the result of his trial would have been different. Because his conclusory allegations are insufficient to establish prejudice, Petitioner has not satisfied his burden under *Strickland*. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042. These unexhausted claims are without merit and are not substantial claims that excuse the procedural bar. *See Ibarra*, 738 F. App'x at 817. The claims should be denied.

### 10. Peephole Evidence

In an unexhausted claim, Petitioner contends that counsel "failed to argue why piece of paper wasnt [sic] collected, DNA tested, and damaged peephole not photographed."[7] (doc. 10 at 23.) He cites the testimony of the lead detective, Detective Steven David (Detective David), about both, and the reference to them during the prosecution's opening statement and closing arguments in support of its theory that Petitioner kidnapped the victim. (*See id.* at 9, 14, 23.)

The record shows that the Detective David admitted during trial that the piece of paper which law enforcement concluded had been used by Petitioner to block the peephole to the door of the victim's residence to facilitate the kidnapping of the victim was not collected as evidence and or tested for DNA. (*See* doc. 16-25 at 101-02.) During closing arguments, defense counsel emphasized Detective David's testimony that "[t]hey have no evidence that [Petitioner] abducted

---

[7] Petitioner's state habeas application includes a claim of ineffective assistance of counsel based on counsel's alleged failure "to review photographs of the door at the [victim's] residence to prove the peephole wasnt [sic] 'dug out' from outside the home, but screwed from the inside." (doc. 16-32 at 5.) The Texas Court of Criminal Appeals denied this claim when it denied the state habeas application, and Petitioner does not appear to raise the claim in this § 2254 case. Even if his § 2254 filings are liberally construed as alleging this claim, however, his conclusory assertions and speculation are insufficient to warrant § 2254 relief. He therefore cannot show that the state habeas court's rejection of this claim was unreasonable, and it should be denied.

[the victim]." (doc. 16-25 at 207; *see also id.* at 208-09, 218.)

Assuming for purposes of this motion only that counsel's performance was deficient based on his failure to further argue about the piece of paper at issue not being collected as evidence or tested for DNA, Petitioner's claim still fails. He has not presented any facts or evidence demonstrating a reasonable probability that the outcome of his trial would have been different absent counsel's alleged deficiency. Because he has failed to demonstrate *Strickland* prejudice, his ineffective assistance claim is without merit, and it is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817. The claim should be denied.

### 11. *Arguments Regarding the Victim*

In two unexhausted claims, Petitioner contends that counsel failed to argue that "during incident with [Petitioner], [the victim] was driving while intoxicated therefore his prior intox [sic] vehicular manslaughter conviction was relevant in [Petitioner's] trial," and that the victim "was driving in direct route to area his ex-girlfriends [sic] mother lived." (doc. 10 at 23.)

Assuming for purposes of this motion only that counsel rendered deficient performance by failing to raise the arguments regarding the victim as alleged, Petitioner still must show prejudice under *Strickland*. Aside from conclusory allegations and speculation, he has failed to provide any facts or evidence showing a reasonable probability that the result of his trial would have been different absent counsel's alleged deficiency. Because he has failed to satisfy the prejudice prong of *Strickland*, his claims are without merit and are not substantial claims that excuse the procedural bar. *See Ibarra*, 738 F. App'x at 817. These conclusory claims should be denied.

### 12. *Evidence Tampering*

In an unexhausted claim, Petitioner contends that counsel failed "to raise issue of Detective Bazans [sic] tampering with evidence." (doc. 10 at 23.) Petitioner's claim appears to be based on

a towel that was found at the scene of the crime.  (*See id.* at 12, 16, 23.)  Relying on testimony from the first responding officer at the scene, Officer Jacobs, and Detective Bazan regarding the location of bullet casings and evidence found at the scene, Petitioner argues that Detective Bazan "later photographed the evidence [Officer] Jacobs had seen, however, [Detective] Bazan rearranged these items, covered them with a bloody towel then photographed it.  [Detective] Bazan intentionally didnt [sic] collect the towel as evidence, instead he moved it again to the front passenger floorboard and used it to stabilize his camera to take more photos.  This towel can be seen at the bottom of states [sic] exhibit no. 22, which [Detective] Bazan distorted its image with photo editing software."  (*Id.* at 16 (citations to the record omitted); *see also id.* at 12.)

Aside from conclusory allegations and speculation, Petitioner has not shown that Detective Bazan unlawfully tampered with evidence.[8]  At most, he identifies alleged inconsistencies between the testimony of Detective Bazan and Officer Jacobs, which were resolved by the trier of fact.  Because he has not shown that Detective Bazan unlawfully tampered with evidence, he cannot show that counsel's performance was deficient for failing to raise a meritless issue.  *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at 415.  Even assuming deficient performance of counsel as alleged, Petitioner also has failed to show a reasonable probability that the result of his trial would have been different absent the alleged deficiency of counsel.  He has failed to satisfy his burden under *Strickland* to show ineffective assistance of counsel, and his claim is not a substantial one that excuses the procedural bar.  *See Ibarra*, 738 F. App'x at 817.  The claim should be denied.

### 13. DNA Testing

Petitioner contends that counsel "failed to DNA test latex gloves or subpoena expert Dr.

---

[7] In Texas, the elements of tampering with evidence are: "(1) knowing an investigation or official proceeding is pending or in progress, (2) altering, destroying, or concealing something, (3) with the intent to make it unavailable as evidence in the investigation or official proceeding."  *Rico v. Quarterman*, No. 2:07-CV-0244, 2009 WL 2015786, at *6 (N.D. Tex. July 10, 2009) (citing Tex. Penal Code Ann. § 37.09).

Robert C. Benjamine [sic]." (doc. 10 at 24.) He raised this claim in his state application as to the failure to test the latex gloves for DNA. (*See* doc. 16-31 at 50-51.) In his affidavit in response, counsel stated, "After a conference with the DNA expert appointed by the Court [Dr. Robert C. Benjamin], concerning the latex gloves and other forensic evidence, it was decided that the forensic evidence would not be tested as a matter of trial strategy. . . . Further it was decided that the testing would be included in the closing summation." (doc. 16-33 at 35.) The state habeas court found counsel's affidavit testimony to be credible; it also found that counsel's decision regarding the latex gloves and other forensic evidence "was the result of reasonable trial strategy in light of the strong evidence against [Petitioner]," and that "counsel's strategy to attempt to create reasonable doubt during closing by highlighting the State's failure to test certain evidence was reasoned trial strategy." (doc. 16-34 at 5.) It also found that Petitioner's "conviction was supported by witness testimony establishing that [sic] [Petitioner] as pointing the gun and struggling with the deceased prior to the shooting." (*Id.* at 5-6.) The Texas Court of Criminal Appeals denied this claim on these findings when it denied the state habeas application. (*See* doc. 16-30.)

Petitioner has not shown that the state habeas court's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceedings. Nor has he satisfied the doubly deferential standard to obtain relief. Accordingly, his claim should be denied.[9]

### 14. Defense Closing Argument

In an unexhausted claim, Petitioner contends that counsel failed "to give effective closing argument which he rambled for 25 minutes," and cites counsel's closing argument in the trial

---

[9] Petitioner's claim that counsel was ineffective because he failed to subpoena or call Dr. Benjamin at trial is also without merit for the reasons discussed regarding uncalled witnesses.

transcript.  (doc. 10 at 24.)  He does not otherwise develop this argument in his § 2254 petition, brief, or reply.  He is not entitled to relief on this conclusory claim.  *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042.  Because this unexhausted claim of ineffective assistance of counsel does not have merit, it is not a substantial claim that excuses the procedural bar.  *See Ibarra*, 738 F. App'x at 817.  The claim should be denied.

### 15. State's Closing Argument

Petitioner contends that counsel "failed to object, request for [sic] curative instruction and mistrial, for. . . prosecutors [sic] improper closing argument."  (doc. 10 at 24; *see also id.* at 11.) Petitioner raised these claims in his state habeas application.  (*See* doc. 16-32 at 9-10, 16.)

In the state habeas proceedings, the state habeas court noted that counsel "objected that the State's comments [regarding defense counsel's statements about the state failing to test evidence] were demeaning and the trial court may have wanted to be cautious by sustaining the objection," and that he "acknowledged that he did not request further relief after the Court sustained his objection and his action was not intentional."  (doc. 16-34 at 13.)  It found that "the evidence against [Petitioner] at trial was substantial" and specifically listed six categories.  (*Id.* at 13-14.)  It then found that Petitioner "failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel requested a curative instruction in light of the evidence against him."  (*Id.* at 14.)  The Texas Court of Criminal Appeals denied this claim on these findings when it denied the state habeas application.  (*See* doc. 16-30.)

To the extent Petitioner claims that counsel failed to object to the prosecution's closing argument, the state habeas court found, and the record shows, that counsel objected to the prosecution's comments during closing arguments relating to the non-testing of the latex gloves, and that the objection was sustained.  (*See* doc. 16-25 at 218-19; doc. 16-34 at 13.)  Because this

claim is refuted by the record, Petitioner has failed to show deficient performance by counsel. Nor has he alleged any facts or evidence demonstrating resulting prejudice. He has failed to satisfy both *Strickland* prongs, so this claim lacks merit.

Even assuming for purposes of this motion only that counsel rendered deficient performance by failing to request a curative instruction or move for a mistrial as alleged, Petitioner has failed to offer any facts or evidence demonstrating a reasonable probability that the outcome of his trial would have been different but for these alleged deficiencies. His conclusory allegations of prejudice are insufficient satisfy his burden under *Strickland*. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042. Any claims on these grounds are therefore also without merit.

Because Petitioner's claims are without merit, he has failed to show that the state habeas court's rejection of his claims was unreasonable, and the claims should be denied.

### 16. Photo of Victim

In an unexhausted claim, Petitioner contends that counsel "failed to object, request for [sic] curative instruction and mistrial for. . . state witness Harris presenting photo to jurors while on witness stand." (doc. 10 at 24.) His ex-wife, "while holding a large 8½", 11" framed photo of the smiling, non violent appearing [sic] [victim], entered the court. . . . After standing before the judge to be sworn in, [the ex-wife] stood the photo on top of the witness stand facing juors [sic]. After moments passed [the trial court] instructed her to 'Take it down, you may proceed,' which [the ex-wife] simply laid it face-up on top of the witness stand for jurors to continue viewing it." (doc. 10 at 17; *see also id.* at 13.) Petitioner claims the "photo appealed to the jurys [sic] emotional side and encouraged them to make a decision on an emotional basis." (*Id.* at 13.)

Even assuming for purposes of this motion only that counsel rendered deficient performance regarding the ex-wife's photo of the victim at trial as alleged, Petitioner's claim still

fails.  He offers no facts or evidence to demonstrate a reasonable probability that the result of the trial would have been different but for counsel's failure to further object, request a curative instruction, or move for a mistrial based on the photo.  His conclusory allegations regarding the impact of the photo on the jury are insufficient to show *Strickland* prejudice.  *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042.  Because Petitioner cannot satisfy his burden under *Strickland*, this is not a substantial claim that excuses the procedural bar.  *See Ibarra*, 738 F. App'x at 817.  The claim should be denied.

### 17. *Juror and Witness Conversation*

Petitioner contends that counsel "failed to object, request for [sic] curative instruction and mistrial for . . . Juror Quibles [sic] conversation with states [sic] witness [Detective] David."  (doc. 10 at 24.)  He raised these claims in his state habeas application.  (*See* doc. 16-31 at 44-45; doc. 16-32 at 15.)  The state habeas court found that:

> [T]he record reflects that the issue was brought to the Courts [sic] attention and a hearing was held outside the presence of the jury to determine whether the juror's conversation with the detective would effect [sic] his ability to serve as an impartial juror in this case.  The Court determined after inquiry, that the unrelated conversation would not effect [sic] the juror's ability to be fair.

(doc. 16-33 at 59; *see also* doc. 16-34 at 1.)  It also found that "there was no conversation by the juror regarding the pending case[,]" and that "it was within the trial courts [sic] discretion to determine that the conversation had no effect on the juries [sic] ability to follow the law."  (doc. 16-34 at 1.)  It further found that Petitioner "failed to plead and prove his claim that he was denied a fair trial by a brief non related [sic] exchange between the juror and officer," and "failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel lodged an objection."  (*Id.*)  It recommended that the claim be denied, and the Texas Court of Criminal Appeals rejected the claim on these findings when it denied the state habeas

application.  (*See id.* at 2; doc. 16-30.)

Petitioner has failed to show that the state habeas court's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  He offers no facts or evidence beyond speculation and conclusory assertions, neither of which are sufficient to warrant § 2254 relief, to demonstrate that the result of his trial would have been different but for counsel's alleged deficiency.  *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042.  The claim should be denied.

### 18. Conflict of Interest

Petitioner contends that a conflict of interest existed because trial counsel "quoted Christian scripture to prospecting [sic] and acting jurors," and "accused [Petitioner] of murder."  (doc. 3 at 11; *see also* doc. 10 at 15-16.)  He asserted a claim of conflict of interest in his state habeas application based in part on counsel quoting from the bible during voir dire and opening statements.  (*See* doc. 16-31 at 27-28.)

The state habeas court found that Petitioner made "no argument of how any references to the bible constituted a violation of his rights at trial other than the comment offending his personal belief system," and recommended denial of the claim.  (doc. 16-33 at 52.)  The Texas Court of Criminal Appeals denied relief on the findings of the trial court when it denied the state habeas application.  (*See* doc. 16-30.)  The claim that a conflict of interest existed because counsel "accused [Petitioner] of murder," is unexhausted.

When a petitioner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan,* 446 U.S. 335 (1980) provides the applicable standard.  *See*

*Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir. 2000). A petitioner may show ineffective assistance of counsel under *Cuyler* without showing prejudice. *Id.* at 781-82. Under *Cuyler*, the court determines "(1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante,* 404 F.3d 376, 391-92 (5th Cir. 2005) (emphasis in original); *see also Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). The Fifth Circuit has held that the standard set forth in *Cuyler* applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott,* 65 F.3d 1258, 1270-72 (5th Cir. 1995). Because Petitioner does not identify a conflict of interest caused by multiple representation, the *Strickland* standard applies. *See Beets*, 65 F.3d at 1272.

Petitioner has not alleged any facts or evidence showing that counsel rendered deficient performance by quoting from the bible or resulting prejudice under *Strickland*. He has failed to show that the state habeas court's denial of this claim was unreasonable. To the extent he contends that there was a conflict of interest because counsel "accused [Petitioner] of murder," his claim is refuted by the record. (doc. 3 at 11.) The record shows that counsel did not accuse Petitioner of murder; as discussed, his theory of the case was that Petitioner "killed his abductor, his kidnapper, and his assailant in self-defense."[10] (doc. 16-24 at 15.) A finding by the jury that Petitioner acted in self-defense would have resulted in a verdict that he was not guilty of capital murder or murder. (*See* doc. 16-20 at 42.) Counsel's statements are consistent with Petitioner's "claim of innocence" and co-counsel's arguments at trial challenging the sufficiency of the evidence. (doc. 10 at 15.) Because Petitioner's unsubstantiated allegations are refuted by the record, his unexhausted claim

---

[10] In his § 2254 filings, Petitioner omits the portion of counsel's statement that Petitioner killed the victim in self-defense. (*See, e.g.*, doc. 10 at 15.)

is without merit. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). It is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817.

Petitioner's conflict of interest claim should be denied.

## B.    <u>Appellate Counsel</u>

In his first ground, Petitioner contends that his "appointed, direct appeal attorney failed to request supplementation of the trial record to include omitted portion and correct inaccurate testemony [sic]," and he argues that appellate counsel "filed brief based on inadequate record." (doc. 3 at 6; *see also* doc. 10 at 24.) He also claims that when appellate counsel "was hospitalized and died, Petitioner was unrepresented on appeal." (*Id.*)

### 1.    *Failure to Request Supplementation of Trial Record*

In an unexhausted claim, Petitioner contends that appellate counsel was ineffective because "any right to appeal guaranteed to [Petitioner] was denied being [appellate counsel], due to the inaccurate record couldnt [sic] recall what occurred during trial." (doc. 10 at 5.) He claims that appellate counsel ignored his "exculpatory claims," and that in response to his "request to rais [sic] juror misconduct, [appellate counsel] stated that he could only argue issues within the record." (*Id.*) Petitioner alleges that he subsequently asked appellate counsel to request supplementation of the record, and that the record on appeal "excluded [a] portion related to an inquiry of juror Christopher Quible by [the trial court] upon Quible being overheard by other jurors having a conversation with states [sic] witness Detective Steven David." (*Id.*) He argues that the trial court "erred in: seeing no bias [sic] in Quible, not questioning [Detective] David as to his part in their

conversation, and not questioning the other male jurors who overheard the conversation or issuing

to them instruction to disregard." (*Id.*)  According to him, if appellate counsel "had been provided

an accurate record to adequately argue this juror issue and other exculpatory claims, [Petitioner]

would not be currently seeking relief in this court."  (*Id.* at 6.)

Even assuming for purposes of this motion only that appellate counsel rendered deficient

performance by failing to request supplementation of the record as alleged, Petitioner must also

show prejudice.  He has failed to show a reasonable probability that he would have prevailed on

direct appeal absent counsel's alleged deficiency; his conclusory allegations are insufficient to

establish *Strickland* prejudice.  *See Briseno*, 274 F.3d at 207; *Miller*, 200 F.3d at 282; *Green*, 160

F.3d at 1042.  Because he has failed to show *Strickland* prejudice, his claim is without merit, and

is not a substantial claim that excuses the procedural bar.  *See Ibarra*, 738 F. App'x at 817.  The

claim should be denied.[11]

### 2.  *Death of Counsel*

Petitioner contends that in "approximately January 2017, [appellate counsel] died,

afterwards [Petitioner] was unrepresented."  (doc. 10 at 5; *see also* doc. 3 at 6.)  He raised this

claim in his state habeas application.  (*See* doc. 16-32 at 18.)  The state habeas court found that

Petitioner "had a meaningful appeal," and "was represented by an attorney on Appeal who

exercised all of the skill and expertise that one could reasonably expect from an Appellate

attorney."  (doc. 16-34 at 18.)  It also found that "Appellate counsel's death occurred **after** the

filing of [Petitioner's] appellate brief."  (*Id.*)  The state habeas court found that Petitioner was not

---

[11] To the extent Petitioner alleges that appellate counsel "ignored [Petitioner's] exculpatory claims," he does not otherwise develop this claim or explain what exculpatory claims counsel could or should have raised on appeal.  (doc. 10 at 5.)  He therefore has not shown any "[s]olid, meritorious arguments based on directly controlling precedent" that counsel should have raised on direct appeal, and he has not shown *Strickland* prejudice as to any alleged exculpatory claims.  *Williamson*, 183 F.3d at 462-63.  This unexhausted claim should therefore be denied on this basis.

denied effective assistance of counsel on appeal and was not denied process.  (*See id.*)  The Texas Court of Criminal Appeals rejected the claim on these findings when it denied the state habeas application.  (*See* doc. 16-30.)

The record shows that after being notified about appellate counsel's death, the state appellate court removed the appeal from submission and ordered that new appellate counsel be appointed for the duration of Petitioner's appeal.  (*See* doc. 16-21 at 60-61.)  It also noted that "[t]he case has been fully briefed, and this appeal will proceed on the briefs before the Court."  (*Id.* at 60; *see also id.* at 62.)  Once the state appellate court was notified that new appellate counsel had been appointed, it noted that the case would "be submitted in due course."  (*Id.* at 62.)

Petitioner has failed to allege any facts or evidence showing that appellate counsel rendered deficient performance when the case had been fully briefed at the time of his death, and that he was prejudiced as a result of appellate counsel's death.   He has failed to satisfy both *Strickland* prongs, and he has not shown that the state habeas court's rejection of this claim was unreasonable. The claim should be denied.

## C.    **Cumulative Error**

In an unexhausted claim, Petitioner contends, "In totality, defense counsels [sic] actions were unreasonable and constituted a 'negligent omission' . . . .Due to ineffective assistance of defense counsel, the entire trial proceeding was fundamentally unfair . . . ."  (doc. 10 at 24; *see also* doc. 3 at 13.)  He claims that trial "and appellate counsels [sic] deficient representation clearly prejudiced the outcome of the trial and appeal[.]"  (*Id.*)

"[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas

31

purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)) (internal quotation marks omitted).

As discussed, Petitioner has not shown that trial and appellate counsel rendered ineffective assistance or that the state habeas court's rejection of his claims was unreasonable, so he has not shown that there were cumulative errors based on the ineffective assistance of counsel. He is not entitled to relief on this claim, and it should be denied.

## V.    JUROR MISCONDUCT

In his second ground, Petitioner alleges that "Juror Christopher Quible and states [sic] witness Detective Steven David were overheard by witnesses and jurors having a conversation in the restroom during court recess", but the jurors "were not ordered to disregard what they heard, nor were they questioned." (doc. 3 at 6.) He argues that "[Juror] Quible knowing that [Petitioner's] case was investigated by [Detective] David influenced him and other jurors to believe [Petitioner] was guilty as the accused are depicted on the show [The First 48[12]]. [Juror] Quibles [sic] misconduct and the judges [sic] error had an identifiably negative impact on the trial to such a degree the constitutional rights of [Petitioner] were comprimised [sic]. (Blacks [sic] Law Dictionary 'manifest constitutional error['] 1985). The witnesses who overheard their conversation were provided a second exposure to evidence without cross examination." (doc. 10 at 6.)

As discussed, the state habeas court found that the conversation between Juror Quible and Detective David was brought before the trial court, and a hearing was held outside the presence of the jury to address whether the conversation would affect Juror Quible's impartiality. (*See* doc. 16-33 at 59.) The trial court determined that the conversation was unrelated to the case and would

---

[12] The state habeas court references the television show as "48 Hours," but its name appears to be "The First 48." (*See* doc. 16-33 at 59.)

not affect Juror Quible's impartiality. (*See* doc. 16-34 at 1.) The state habeas court further found that "it was within the trial courts [sic] discretion to determine that the conversation had no effect on the juries [sic] ability to follow the law." (*Id.*) The Texas Court of Criminal Appeals rejected the claim on the findings of the state habeas court when it denied the state habeas application. (*See* doc. 16-30.)

Here, Petitioner has failed to show that the state habeas court's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented during the state court proceedings. His speculative and conclusory assertions that the unrelated conversation between Juror Quible and Detective David influenced Juror Quible and other, unnamed jurors "to believe [Petitioner] was guilty," and that his constitutional rights were compromised by Juror Quible's actions and the trial court's ruling are insufficient to warrant federal habeas relief. (doc. 10 at 6); *see also Ross*, 694 F.2d at 1011; *Koch*, 907 F.2d at 530 ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"). Accordingly, the claim should be denied.

## VI.    *BRADY* CLAIM

In his third ground, Petitioner alleges a claim of "withholding evidence" in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (doc. 3 at 7.) He contends that "Detective Scott Bazan tampered with physical, fingerprint and biological evidence. Forensic biologist Courtney Ferreira intentionally and in bad faith refused to DNA test exculpatory evidence." (*Id.*)

Petitioner raised this claim in his state habeas application as to the alleged failure to DNA test the latex gloves found at the crime scene. (*See* doc. 16-31 at 48.) The state habeas court found that the claim was without merit because Petitioner's own application "reveal[ed] that both the

State and Defense were aware of all physical evidence collected at the scene whether tested or not." (doc. 16-34 at 4.)  The Texas Court of Criminal Appeals rejected the claim on these findings when it denied the state application.  (*See* doc. 16-30.)

A prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. *See* 737 U.S. at 87.  "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (citation omitted). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed.  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

Here, Petitioner has failed to identify any evidence "which had been known to the prosecution but unknown to the defense" for purposes of *Brady*.  *Lawrence*, 42 F.3d at 257.  He also has failed to present any facts or evidence beyond conclusory assertions to show that the alleged evidence at issue was favorable to him, was suppressed by the State, and resulted in prejudice.  *See Stickler*, 527 U.S. at 281-82.  He has not shown that the state habeas court's findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state habeas proceedings. [13]  The claim should therefore be denied.

_____

[13] In his brief in support of the § 2254 motion, Petitioner's allegations against Detective Bazan appear to refer to a towel that was observed at the crime scene, but not collected as evidence.  (*See* doc. 10 at 7.)  To the extent this

## VII.    PERJURY

In his fourth ground, Petitioner contends that his trial counsel and the state trial court reporter "gave false statements under oath."  (doc. 3 at 7.)  He also contends that the state's witnesses "Kimble, Harris, Coleman, David, Bazan, Ferriera, and Medical Examiner Candace Schoppe gave perjured testimony during trial."  (*Id.*)

The presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To prevail on a claim that his constitutional rights were violated by the presentation of false testimony, Petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) it was material.  *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994).  Evidence is "material" when it is "a highly significant factor reasonably likely to have affected the jury's verdict."  *Id.*  Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).  Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531.

### A.    <u>Trial Counsel</u>

Petitioner appears to argue that trial counsel committed perjury through various statements

---

allegation may be liberally construed as asserting an unexhausted claim that Detective Bazan failed to preserve "potentially useful evidence" by not collecting the towel found at the scene, this failure "does not violate due process '*unless a criminal defendant can show bad faith on the part of the police.*'"  *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (emphasis in original).  Detective Bazan testified that he did not collect the towel because it appeared to him, in consultation with other law enforcement officers, that the "gloves just seemed out of the ordinary and so we just took the glove[s]."  (doc. 16-24 at 170.)  Petitioner has failed to show bad faith on the part of the police, and his claim should be denied on this basis.

in the amended affidavit he submitted in response to Petitioner's state habeas application.  (*See* doc. 10 at 8-9.)  Petitioner's claim challenges events from the state habeas proceedings.  "An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'"  *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (citation omitted); *see also Brown v. Dretke*, 419 F.3d 365, 378 (5th Cir. 2005) ("alleged infirmities in state habeas proceedings are not grounds for federal habeas relief.").  Because he is challenging events from the state habeas proceedings, his claim should be denied.

**B.    Court Reporter**

Petitioner appears to argue that the state trial court reporter's certification that the reporter's record "contain[ed] a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record . . ., all of which occurred in open court or in chambers and were reported by me[,]" constitutes perjury.  (doc. 16-22 at 11; *see* doc. 10 at 10.)  He claims "a significant portion [of the state trial proceedings] was intentionally excluded from the record by [the court reporter] involving an inquary [sic] hearing of Juror Christopher Quible for his conversation with states [sic] witness, Detective Steven David."  (doc. 10 at 10.)  He did not present this claim to the highest available state court for review prior to raising it here, so it is unexhausted and procedurally barred from federal habeas corpus review.  *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423.

Moreover, the claim lacks merit because Petitioner has failed to show a constitutional violation.  He does not present any facts or evidence, and the record does not show, that the court reporter presented any testimony, much less false testimony, at his trial; nor has he shown that the reliability of the court reporter may have been determinative of his guilt or innocence at trial.  *See*

*Napue*, 360 U.S. at 269.  This unexhausted claim is therefore without merit and should be denied.[14]

## C.    Victim's Mother

Petitioner contends that Helen Kimble, the victim's mother, "gave perjured testimony during trial."  (doc. 3 at 7.)  He appears to argue that the victim's mother committed perjury in connection with her testimony that the victim had a commercial driver's license (CDL), and that she did not know about the victim's "'constant cheating and violence'" against Petitioner's ex-wife.  (doc. 10 at 9.)  Because he has not presented this claim to the highest available state court for review prior to raising it here, the claim is unexhausted and procedurally barred from federal habeas corpus review.  *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423.

Even if it is not barred, the claim is without merit.  Regarding the victim's CDL, Petitioner asserts that the victim "had an intoxication vehicular manslaughter conviction . . . which would bar [sic] him from acquiring a commercial drivers [sic] license[.]"  (doc. 10 at 9.)  He also lists the contents of the wallet received by the medical examiner with the victim's body, which did not include a CDL, or any other type of license.  (*See id.*; doc. 16-27 at 42.)  These allegations and evidence fail to establish that the victim did not have a CDL license.[15]  Further, he does not provide any facts or evidence showing that the victim's mother knew anything about whether the victim

---

[14] To the extent Petitioner claims that the court reporter's exclusion from the reporter's record of a hearing involving Juror Quible violated the Texas Rules of Appellate Procedure, his claim involves an alleged failure to comply with state procedural rules, and it does not raise an issue of federal constitutional law.  *See generally Dickerson v. Guste,* 932 F.2d 1142, 1145 (5th Cir.1991) ("'We do not sit as a 'super' state supreme court' in [a § 2254] proceeding to review errors under state law.") (citation omitted).

[15] In Texas, although a person may not be issued a CDL "if, in connection with the person's operation of a commercial motor vehicle, the person commits an offense or engages in conduct that would disqualify the holder of a commercial driver's license from operating a commercial motor vehicle, or is determined to have had an alcohol concentration of 0.04 or more or to have had a controlled substance or drug present in the person's body," the period of such prohibition is "equal to the appropriate period of disqualification required by Subsections (a)-(d)."  Tex. Transp. Code. § 522.081(e) (2015).  Additionally, even a lifetime CDL disqualification can be reinstated by the Texas Department of Public Safety under certain circumstances.  *See* Tex. Transp. Code. § 522.082.  Petitioner has not provided any facts or evidence beyond his conclusory assertions to show that the victim could not be issued a CDL based on his alleged prior conviction of intoxication vehicular manslaughter.

cheated on or was violent towards his ex-wife.[16]

Petitioner's conclusory allegations and alleged evidence do not establish that the victim's mother's testimony was false, or that the prosecution knew that any such testimony was false. Nor has he shown that the alleged perjured testimony was material. This unexhausted claim is therefore without merit and should be denied.

### D.    Ex-Wife

Petitioner contends that his ex-wife "gave perjured testimony at trial." (doc. 3 at 7.) He claims: "When asked if she was physically assaulted by the [victim] on September·13·2014 when [Petitioner] entered her home after being called to protect her, [the ex-wife] answered 'No'. . . . However, in a letter dated Feb·2·2019 sent to [Petitioner] by [the ex-wife] referring to this incident, [the ex-wife] admitted being 'slapped . . . around' and 'hit . . .in the face' by [the victim.]" (doc. 10 at 9.) He has not presented this claim to the highest available state court for review prior to raising it here; as such, it is unexhausted and procedurally barred. *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423.

The claim is also without merit. The portion of the February 2019 letter from the ex-wife relied upon by Petitioner states, "That day you came up them stairs I was so glad to see you I was shocked but glad. He had slapped me around and hit me in the face. Hey thanks for helping your kids [sic] mother out." (doc. 5 at 56-57.) The ex-wife identified neither "[t]hat day" to which she was referring, nor the "he" who struck her. (*See id.*) Assuming for purposes of this motion only that the letter refers to the September 2014 encounter[17] between Petitioner and the victim, about

---

[16] It appears that Petitioner seeks to show that the victim cheated on and was violent to the ex-wife by citing February 2019 correspondence from the ex-wife, which was not presented to the state habeas court, in which the ex-wife indicated that the victim physically assaulted her. (*See* doc. 10 at 9; *see also* doc. 5 at 56-57.) On September 6, 2022, he also submitted undated correspondence allegedly from the ex-wife, in which she indicated that the victim had "been cheating all the years we have been dating" and had hit her in the face. (*See* doc. 65 at 3.) Even if considered, neither letter provides any facts or evidence showing that the victim's mother had knowledge of these events.

[17] The record shows that in September 2014, the ex-wife and the victim got into an argument at the home they shared.

which the ex-wife and her daughter testified at trial, Petitioner has failed to show that the ex-wife's

allegedly false testimony that the victim did not hit her during an argument they had that day,

approximately six months before the victim's murder, was material to Petitioner's conviction,

especially given the extent of the other testimony and evidence supporting the conviction.[18]  *See*

*Blackmon*, 22 F.3d at 565.

      Petitioner has not shown that he is entitled to relief on this claim, and it should be denied.

**E.**    <u>**Eyewitness**</u>

      Petitioner contends that Cedric Coleman (Coleman), a testifying eyewitness, "gave

perjured testimony during trial." (doc. 3 at 7.)  He argues:

> Cedric Coleman testified that [Petitioner] opened the rear passenger door after the
> accident trying to get out prior to the shooting, and at the same time [Petitioner]
> opened the door he had "firm control of the hand gun" with both "hands on the
> grip" pointing the gun at the [victim].  However, when asked if he knew if the
> [victim's] hand covered [Petitioner's] or vice versa, Coleman stated, "I assume – I
> – probably the guy that was in the front seat, I mean, I just seen hands on the gun.
> I cant [sic] tell you exactly who hand [sic] was on top . . . it looked like the drivers
> [sic] hand was on top of his hands, the – the person in the back."  Coleman testified
> that upon seeing the struggle, he "didnt [sic] try to hang around [he] took off
> running" and afterwards he "heard the gun go off."  When asked how soon the gun
> discharged once he'd seen it, Coleman stated, "Soon as . . . the door opened . . . the
> one shot went off."  Coleman identified the hand positions on the gun, the direction
> it was pointing, he identified the type of gun as being a "9-millimeter["] and stated
> "I know a 9-millimeter when I see it."  However his reason for not seeing the gun
> discharge was because the "windows . . . was fogged up with smoke . . .from the
> accident" so he "just heard a shot."

(doc. 10 at 9, 12 (citations to record omitted).)  Petitioner did not present this claim to the highest

---

[17] (*See* doc. 16-24 at 195-97; doc. 16-25 at 43-44, 58.)  The ten-year-old daughter of Petitioner and the ex-wife heard the argument and called Petitioner.  (*See* doc. 16-25 at 58-60, 65-66.)  Petitioner arrived at the home with a gun after the argument had already finished, pointed the gun at and spoke to the victim, and walked the victim out of the house, after which the victim drove off. (*See* doc. 16-24 at 198-200; doc. 16-25 at 31, 40, 58-61, 67-68.)

[18] The undated correspondence allegedly from the ex-wife that Petitioner filed on September 6, 2022, also does not identify "the day in question" for the events it described.  (doc. 65 at 3.)  Even assuming it refers to the September 2014 encounter between Petitioner and the victim, Petitioner has still failed to show that the ex-wife's alleged false testimony at trial about not being hit by the victim was material to his conviction.

available state court for review prior to raising it here; as such, it is unexhausted and procedurally barred. *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423.

Notwithstanding the lack of exhaustion and procedural bar, this claim lacks merit. Any contradictory or conflicting testimony from Coleman does not establish perjury, and it does not show that the prosecutor knowingly used perjured testimony. *See Koch*, 907 F.2d at 531; *Martinez-Mercado*, 888 F.2d at 1492. It was a matter for the jury to resolve any contradictions or inconsistencies in the testimony. *See Koch*, 907 F.2d at 531. Petitioner has not shown that he is entitled to § 2254 relief on this claim, and it should be denied.

**F.    Detectives**

Petitioner contends that Detective David and Detective Bazan "gave perjured testimony during trial." (doc. 3 at 7.)

Petitioner raised a claim of perjury in his state habeas application in which he recited testimony by Detective David and his ex-wife relating to a pamphlet and a piece of paper that was ripped from it and used to block the peephole to the victim's front door. (*See* doc. 16-32 at 1.) The state habeas court found that he "simply recites testimony of various witnesses in his ground of error that went to the weight rather than the admissibility of the evidence," and recommended that his perjury claim be denied. (doc. 16-34 at 7-8.) The Texas Court of Criminal Appeals rejected the claim on these findings when it denied the state habeas application. (*See* doc. 16-30.)

Petitioner now recites additional testimony from Detective David regarding the discovery of the small piece of paper used to cover the peephole of the victim's front door and a Huffy bicycle manual, found in the victim's yard, from which the piece of paper was ripped, and his testimony that the manual was "soaked" from rain the day before, so it could not be tested for forensic evidence. (*See* doc. 10 at 9; doc. 15-25 at 101-02, 104.) He claims that the prosecution "alleged

40

that [Petitioner] while on a 'Huffy bicycle' rode to [the victim's] home and kidnapped him by covering the peephole," and that the small "piece of paper, although [Detective] David intentionally failed to collect it as evidence, it was used in the states [sic] claim that [Petitioner] kidnapped the [victim]." (doc. 10 at 9.) Petitioner does not provide any facts or evidence showing that Detective David's testimony was false or that the prosecution knew it was false. To the extent his testimony was inconsistent or conflicted with the prosecution's theory of the case, inconsistencies or conflicts do not establish perjury and were resolved by the jury. *See Koch*, 907 F.2d at 531; *Martinez-Mercado*, 888 F.3d at 1492. He has not shown that the state habeas court's rejection of the claim was unreasonable.

Regarding Detective Bazan, Petitioner appears to contend that his testimony regarding the evidence found at the scene of the victim's death was inconsistent with the testimony of Officer Jacobs. (*See* doc. 10 at 12.) He did not raise this claim to the highest available state court for review prior to raising it here, and it is therefore unexhausted and procedurally barred.[19]    *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423. The claim is also without merit. Conflicts between a witness's testimony and the testimony of other witnesses do not establish perjury. *See Koch*, 907 F.2d at 531; *Martinez-Mercado*, 888 F.3d at 1492. Any alleged conflicts between Detective Bazan's testimony and the testimony of Officer Jacobs were resolved by the jury and did not constitute perjury. *See id.*

Petitioner's claims of perjury by Detective David and Detective Bazan are without merit. He is not entitled to § 2254 relief on these claims, and they should be denied.

---

[19] In his state habeas ground alleging perjury, Petitioner recites only a single statement of Detective Bazan regarding DNA testing of latex gloves from the crime scene. (*See* doc. 16-32 at 1.) He did not raise any arguments regarding this statement in his § 2254 perjury claim relating to Detective Bazan, so it is not addressed here. (*See* doc. 3 at 7; doc. 10 at 12.)

G.    **DNA Analyst**

Petitioner contends that the testifying DNA analyst, Courtney Ferreira, "gave perjured testimony during trial." (doc. 3 at 7.) He alleges:

> [The] serologist . . . performed "test for blood" and collected samples which included "touch or wearer samples'" from the 43 evidence items. [The DNA analyst] admitted having 'no expectation' of finding DNA as she specifically tested 14 items that had a negative serology result for blood. Although [the DNA analyst] acknowledged that anytime a person "wear [or] touch something" DNA would be left on the object and that a "blood stain" would produce a very strong inclusion, [she] refused to DNA test the latex gloves which contained biological material.

(doc. 10 at 12 (citations to record omitted).)

Petitioner raised a claim of perjury in his state habeas application in which he referenced testimony from the DNA analyst. (*See* doc. 16-32 at 1.) As discussed, the state habeas court found that he "simply recites testimony of various witnesses in his ground of error that went to the weight rather than the admissibility of the evidence," and recommended that his perjury claim be denied. (doc. 16-34 at 7-8.) The Texas Court of Criminal Appeals rejected the claim when it denied the state habeas application. (*See* doc. 16-30.)

Petitioner has not provided any facts or evidence to show that any of the DNA analyst's testimony was false or that the prosecution knew it was false. To the extent he alleges that the DNA analyst "refused to DNA test the latex gloves," his conclusory allegation is unsupported by the record. (*Id.*) Counsel's affidavit in the state habeas proceedings stated, "After a conference with the DNA expert appointed by the Court, concerning the latex gloves and other forensic evidence, it was decided that the forensic evidence would not be tested as a matter of trial strategy. . . . Further it was decided that the testing would be included in the closing summation." (doc. 16-33 at 35.) Petitioner's conclusory and unsubstantiated allegations are insufficient to warrant § 2254 relief. *See Ross*, 694 F.2d at 1011. He has not shown that the DNA analyst gave perjured

testimony, or that the state habeas court's rejection of this claim was unreasonable. He is not entitled to relief on this claim, and it should be denied.

## H.    <u>Medical Examiner</u>

Petitioner contends that the testifying medical examiner, Dr. Candace Schoppe, "gave perjured testimony during trial." (doc. 3 at 7.) He has not presented any claim of perjury by the medical examiner to the highest available state court for review prior to raising it here; as such, it is unexhausted and procedurally barred. *See Coleman*, 501 U.S. at n.1; *Nobles*, 127 F.3d at 423.

Petitioner's claim also lacks merit. He has failed to provide any facts or evidence to show that any of the medical examiner's testimony was false, or that the prosecution knew such testimony was false. He instead appears to take issue with discrepancies within the medical examiner's own testimony, and inconsistencies between her testimony and other trial evidence and testimony. (*See* doc. 10 at 10, 12.) As discussed, inconsistencies within a witness's testimony, and contradictory or conflicting testimony from witnesses do not establish perjury. *See Koch*, 907 F.2d at 531; *Martinez-Mercado*, 888 F.3d at 1492. Any alleged inconsistencies or conflicting testimony were resolved by the jury, so this claim is without merit and should be denied.

## VIII.   IMPARTIAL JURY

In his fifth ground, Petitioner contends that he was denied the "right to trial by an impartial jury." (doc. 3 at 11.) This ground reiterates several of his ineffective assistance of counsel grounds for relief: "Biast [sic] venireperson impaneled as Juror[#]1. Acting jurors were not properly questioned during voir dire. Conversation was held between juror and states [sic] witness, other juror/witnesses who overheard were not questioned. The panel had no black male jurors. Jury was told defense counsel was a liar. Cristianity [sic] was preached to jury, and jurors observed improper photo." (*Id.*)

43

The Sixth and Fourteenth Amendments guarantee a defendant a right to an impartial jury. *Ross v. Oklahoma,* 487 U.S. 81, 85 (1988); *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). The Supreme Court has defined an impartial juror not as one who has no preconceived notions, but instead, one who "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin,* 366 U.S. at 723.

## A.    <u>Voir Dire and Jury Selection</u>

In two unexhausted claims, Petitioner contends that the selected jurors were not properly questioned during voir dire, and that Juror Gjemnica was biased because "when asked to consider the full range of punishment if determined [Petitioner] was guilty of a lesser-included offence [sic], [she] agreed that 25 years was 'pretty short' and she could not comply with the full sentencing range," (doc. 10 at 10 (citations to record omitted); *see also* doc. 3 at 11.) No objections or arguments were made on these issues at trial, on appeal, or during the state habeas proceedings.

In an exhausted claim, Petitioner contends that there "were no black males in the jury and such exemption unconstitutionally violated the 'fair cross-section' requirement of the Sixth and Fourteenth Amendment [sic]." (doc. 10 at 11.) He claims that "black males in Dallas are a 'distinctive group' and were underrepresented at both the jury wheel and summons stage which resulted in their systematic exclusion in the jury selection process[.]" (*Id.*) Petitioner raised this claim in his state habeas application. (*See* doc. 16-31 at 29.) The state habeas court found that because "the issue of improper exclusion of African American jurors was not raised or preserved at trial," it could not "form the basis for habeas relief." (doc. 16-33 at 53.) The Texas Court of Criminal Appeals denied the claim based on these findings when it denied the state habeas application. (*See* doc. 16-30.)

Under Texas' contemporaneous objection rule, a party must make a timely objection with specific grounds for the desired ruling to preserve an issue for appellate review. *Cubas v. Thaler*, 487 F. Appx 128, 130 (5th Cir. 2012) (citing *Livingston v. Johnson*, 107 F.3d 297, 311 (5th Cir. 1997)). A procedural default premised on the petitioner's failure to comply with the Texas contemporaneous objection rule constitutes an adequate and independent bar to federal habeas review. *See Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007) ("[w]e have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural barrier to federal habeas review"). The procedural default of a state defendant who fails to comply with the contemporaneous objection rule precludes federal habeas review of the claim absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87(1977); *see also Nichols*, 69 F.3d at 1280 (precluding federal habeas review of unexhausted claims subject to the contemporaneous objection rule).

Petitioner's claims are procedurally barred because "the Texas contemporaneous objection rule would bar relief in state court" and because the state habeas court applied it to Petitioner's claim that there were no African American jurors in his trial. *Nichols*, 69 F.3d at 1280; *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). He has not shown cause and prejudice to excuse the procedural bar. He is not entitled to § 2254 relief on these claims, and they should be denied.

## B.    Other Claims

Petitioner also contends that "conversation was held between juror and states [sic] witness, other juror/witnesses who overheard were not questioned. . . . Jury was told defense counsel was

a liar.  Cristianity [sic] was preached to jury." (doc. 3 at 11.)  As discussed, the Texas Court of Criminal Appeals rejected these claims on the findings of the state habeas court when it denied the state habeas application.  (*See* doc. 16-30.)  In an unexhausted claim, Petitioner contends that the "jurors observed [sic] improper photo."  (doc. 3 at 11.)

Aside from conclusory allegations and speculation, Petitioner has failed to present any facts or evidence showing that any of the juror's impartiality was affected by these occurrences, or that were unable to "render a verdict based on the evidence presented in court."  *Irvin,* 366 U.S. at 723. Because "[m]ere conclusory statements do not raise a constitutional issue in a habeas case," his exhausted and unexhausted claims are without merit and do not entitle him to § 2254 relief. *Schlang*, 691 F.2d at 799.  He also has not shown that the state court's rejection of his claims was unreasonable as to the exhausted claims.  The claims should be denied.

## IX.    EXCLUSION OF EVIDENCE

In his sixth ground, Petitioner contends that evidence was improperly excluded.  (*See* doc. 3 at 11.) He alleges that "[the victim's] prior intox [sic] manslaughter conviction, piece of paper covering peephole, peephole mechanism and photo of damaged door, fingerprint and biological material on [the victim's] phone, the address of [the victim's brother], record history of firearm and DNA test results of latex gloves were excluded from trial proceedings."  (*Id.*)

To the extent Petitioner complains that the victim's prior conviction for intoxication manslaughter was improperly excluded, the state habeas court recommended the claim be denied, noting that the "exclusion of evidence is non constitutional error, unless it precludes the defendant from presenting the substance of his defense." (doc. 16-34 at 4.)  A trial court's evidentiary rulings are matters of state law which are not subject to re-examination by the federal courts.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may grant habeas relief based on an

erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997). Petitioner has not shown that the exclusion of the victim's prior conviction rendered his trial fundamentally unfair, and he has not shown that the state habeas court's rejection of this claim was unreasonable.

Regarding his remaining claims, the record shows that Detective David testified at trial that the piece of paper that was used to cover the peephole to the victim's door was not collected as evidence and that a history of the gun found at the scene of the crime was not traced after it was determined that the gun had been stolen. (*See* doc. 16-25 at 101, 158.) Counsel's affidavit in response to Petitioner's allegations shows that the latex gloves and other forensic evidence were not tested for DNA as a matter of trial strategy. (*See* doc. 16-33 at 35.) Because the record establishes that none of this evidence existed or was available to be excluded from trial, and Petitioner provides no facts or evidence to the contrary, his conclusory claims that these items were improperly excluded from trial are unsupported by the record and without merit. Further, to the extent he contends that the "peephole mechanism and photo of damaged door" and "the address of Marcus Armington" were improperly excluded from trial, Petitioner has failed to offer any facts or evidence showing that this evidence, assuming it existed as alleged, was offered and excluded at trial. His conclusory and unsubstantiated claims as to these items are therefore also without merit and do not warrant § 2254 relief. His claims on this ground should be denied.

## X.    PROFESSIONAL MISCONDUCT

In his eighth ground, Petitioner alleges professional misconduct by the state trial court, the prosecution, and defense counsel. (*See* doc. 3 at 12.) He alleges: "Detective tampered with and destroyed evidence. Judge allowed improper voir dire questioning. State and defense counsel

knowingly impaneled biast [sic] juror. Christianity preached to jurors by defense counsel. Judge barred re examination [sic] of witness. State actors withheld accurate records. Judge allowed jurors to view improper evidence. Judge permitted biast [sic] jury." (*Id.*) With the exception of his claim of professional misconduct based on "Christianity preached to the jurors by defense counsel," Petitioner's claims are unexhausted and procedurally barred.

## A.    <u>Trial Error</u>

Petitioner contends that the trial court: (1) "allowed improper voir dire questioning"; (2) "barred re examination [sic] of witness"; (3) "allowed jurors to view improper evidence"; and "permitted biast [sic] jury." (*Id.*; *see also* doc. 10 at 16-17)

Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson,* 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" (citation omitted).

> [U]nder *Brecht,* a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson,* 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson,* 75 F.3d 1017, 1026-27 (5th Cir.1996)). To be entitled to federal habeas relief due to a trial error, Petitioner must show that the error actually prejudiced him. *See Brecht,* 507 U.S. at 637.

Notwithstanding the procedural bar on these claims, aside from conclusory assertions and speculation, Petitioner has failed to offer any facts or evidence in the record to show a trial error.

48

Nor has he shown that any of the alleged trial errors had a substantial effect or influence on the verdict given the large amount of circumstantial evidence supporting his conviction. Absent evidence in the record to support his allegations, these conclusory claims are without merit. *See Ross*, 694 F.2d at 1011. Because Petitioner has not established trial error, much less any prejudice from it, his unexhausted claims should be denied.

**B.    State**

Petitioner alleges professional misconduct by the State on the basis that: (1) "Detective tampered with and destroyed evidence"; (2) the prosecution "knowingly impanel[ed] biast [sic] juror"; and (3) "State actors withheld accurate records." (doc. 3 at 12.)

Regarding the first claim, as previously noted, Petitioner contends that Detective Bazan rearranged evidence seen at the crime scene by another testifying officer, covered it with "a bloody towel then photographed it. . . [and] intentionally didnt [sic] collect the towel as evidence, instead he moved it again to the front passenger floorboard and used it to stabilize his camera to take more photos[.]" (doc. 10 at 16.) He alleges that Detective Bazan "distorted [the towel's] image with photo editing software," and that the prosecution knew about the edited photo and rearranged evidence. (*Id.*) He also contends that Detective David "acting in professional misconduct, intentionally destroyed forensic evidence on the [victim's cell] phone serface [sic] and refused to submit it for testing." (*Id.*) These allegations based on inconsistencies in the testimony of Detective Bazan and Officer Jacobs regarding what evidence was visible at the crime scene prior to handling the evidence, are insufficient to show that Detective Bazan unlawfully tampered with or destroyed evidence. *See, e.g.*, *Fisher*, 540 U.S. at 547-48; *Rico*, 2009 WL 2015786, at *6. Petitioner's conclusory assertions that Detective Bazan used "photo editing software" to alter a photo exhibit, and that Detective David intentionally destroyed evidence and refused to send the

victim's cell phone for testing are also insufficient to establish a constitutional violation. [20] *See Ross*, 694 F.2d at 1011; *Koch*, 907 F.2d at 530.

Regarding his claim about an alleged biased juror, Petitioner again asserts his arguments regarding Juror Gjemnica.  As discussed, he has not shown that she was biased based on her alleged inability to consider the full range of punishment for a lesser-included offense.  Even assuming error in seating her as a juror for the reasons alleged, he has failed to show that it was a constitutional violation because he was not sentenced on the range of punishment at issue.  Finally, to the extent he argues that "State actors withheld accurate records," he has not identified any records or shown that they were withheld.  He is not entitled to relief on this conclusory claim.

Petitioner's unexhausted claims of professional misconduct against the state are without merit and should be denied.

## C.    <u>Defense Counsel</u>

Petitioner contends that "defense counsel knowingly impaneled biast [sic] juror," and preached Christianity to the jurors.  (doc. 3 at 12; *see also* doc. 10 at 16-17.)  For the reasons discussed in connection with Petitioner's related claims of ineffective assistance of counsel, these claims are without merit.  He has failed to show that the state habeas court's denial of his claim as to "Christianity preached to jurors," was unreasonable, and he has not shown that he is entitled to § 2254 relief on his unexhausted claim.  The claims should be denied.

## XI.    SUFFICIENCY OF EVIDENCE

In his ninth ground, Petitioner contends that there was "no evidence" in connection with

---

[20] At trial, Detective Bazan described how he took the photograph comprising State's Exhibit No. 22, which Petitioner contends was edited with photo editing software.  (*See* doc. 16-24 at 155-56; doc. 16-27 at 27.)  Based on Detective Bazan's testimony, the photograph did not involve any photo editing software, and refutes Petitioner's conclusory allegations otherwise.

his conviction.  (doc. 3 at 12.)  He argues that there is: "No evidence of intent.  No evidence [Petitioner] walked from 6700 Patrol Way, approached [the victim's] home, hid in his car, covered peephole, dug peephole out, kidnapped [the victim] at gunpoint, forced him to drive, held the gun handle, shot [the victim], consealed [sic] evidence or had possession of his cell phone."  (*Id.*; *see also* doc. 10 at 18-22.)

Petitioner challenged the sufficiency of the evidence in his state habeas application, and the state habeas court recommended that the claim be denied because it was "without merit and [was] barred because it was raised and rejected on appeal."  (doc. 16-34 at 15; *see also* doc. 16-32 at 11-12.)  The Texas Court of Criminal Appeals rejected the claim based on the findings of the state habeas court when it denied the application.  (*See* doc. 16-30.)

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in original).  Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts.  *Id.*  Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review."  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  "Determining the weight and credibility of the evidence is within the sole province" of the trier of fact.  *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict."  *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ]

the weight or credibility given the evidence" by the trier of fact. *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

Here, the state appellate court held that the evidence was sufficient to support the jury's implicit finding that Petitioner intended to kill the victim:

> Proof of intent generally relies upon circumstantial evidence.  A jury may infer intent from the defendant's acts, words, and conduct.
>
> Police investigating the shooting found the gun and a shell casing under the car and concluded that [Petitioner] had placed them there.  The jury could have inferred intent from this attempt to conceal incriminating evidence.
>
> In addition, the specific intent to kill may be inferred from the use of a deadly weapon.  When a deadly weapon is used in a deadly manner, the inference of intent to kill is "almost conclusive."  A firearm is a deadly weapon.  Viewed in the light most favorable to the verdict, the evidence establishes that [Petitioner] fired a handgun at [the victim] at least twice.
>
> [Petitioner] contends that the State failed to prove that the final shot, which would have caused [the victim's] death almost immediately, was purposeful rather than an accidental result of the men struggling.  But the medical examiner concluded that the earlier shot alone could have caused his death.  And evidence of a struggle does not necessarily negate deliberate conduct.  Jurors could have determined that the "tussle" was [the victim's] effort to stave off [Petitioner's] intentional attempts to shoot him.

*Robinson*, 2017 WL 2264823, at *1-2 (internal citations omitted).  After considering the evidence in the light most favorable to the verdict, the state appellate court concluded that "[r]ational jurors could have concluded beyond a reasonable doubt that [Petitioner] fired the gun intending to kill [the victim]."  *Id.* at *2.

The state appellate court also found the evidence sufficient to support the jury's implicit finding that Petitioner kidnapped the victim:

> Kidnapping may be proved by circumstantial evidence.
>
> [Petitioner's] car was found parked within walking distance, but away from view, of [the victim's] home.  A neighbor saw an individual walking away from the car at approximately 5:30 a.m.  [The victim] shared a house with [Petitioner's] ex-wife,

Catherine Harris. The peephole in their front door was covered from the outside sometime after Harris left the house that morning, preventing [the victim] from seeing someone outside. Witnesses testified that [the victim] would never have voluntarily gotten into a car with [Petitioner] or offered him a ride. Harris told police that [the victim] would likely have seen [Petitioner] if he were hiding in [the victim's] car, but evidence established that it was dark and raining between 7:15 and 7:30 when [the victim] must have left the house. [Petitioner] was in the back seat of the car when it crashed, behind [the victim], where [Petitioner] could see and direct him. Finally, [Petitioner] was in control of the gun: he shot [the victim] twice, then threw or placed the gun and a casing under the car.

*Robinson*, 2017 WL 2264823, at *2 (internal citation omitted). It determined that "[r]ational jurors could have concluded beyond a reasonable doubt that [Petitioner] intentionally abducted [the victim]." *Id.*

Although Petitioner points to testimony and evidence from trial that allegedly fails to support the jury's findings,[21] "[d]etermining the weight and credibility of the evidence is within the sole province" of the trier of fact, and the Court does not second-guess these determinations, as discussed. *Martinez*, 975 F.2d at 161; *see also Ramos-Garcia*, 184 F.3d at 465. He has not shown that the state court's findings on the sufficiency of the evidence to support the jury's implicit findings that he intended to kill the victim and that he kidnapped the victim were unreasonable. Petitioner is not entitled to § 2254 relief on this claim, and it should be denied.

## XII.    ACTUAL INNOCENCE

In his tenth ground, Petitioner contends that he is actually innocent of the offense of conviction. (*See* doc. 3 at 12; doc. 10 at 22-23.) He argues that his claim is supported by: "Witness Harris letter to [Petitioner] recanting her testimony. Text message from Harris requesting for protection against [the victim]. Text message from Harris sent to [Petitioner] on March·19·2015 asking him to come to her home on March·20·2015 at 5:30. Detective Bazan's tampering with

---

[21] He also relies on the alleged post-conviction recantation by the ex-wife (*See* doc. 10 at 18; *see also* doc. 65.) The alleged recantation does not contradict or counter the evidence that the state appellate court found sufficient to support the jury's implicit findings of intent and kidnapping. They therefore do not save the claim.

evidence.  Biast [sic] juror impaneled as juror #1."  (doc. 3 at 12; *see also* doc. 10 at 22-23.)

Both the Supreme Court and the Fifth Circuit have held that a stand-alone claim of actual innocence is not a ground for federal habeas relief.  *See Herrera v. Collins,* 506 U.S. 390, 400-01 (1993); *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.") (quoting *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000)).  Even if a "truly persuasive" showing of actual innocence would warrant federal habeas relief, the threshold would be "extraordinarily high."  *Herrera*, 506 U.S. at 417.

Petitioner has not met this high burden.  A claim of "[a]ctual innocence means 'factual innocence, and not mere legal insufficiency.'"  *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The ex-wife's text messages and alleged recantation of her testimony that the victim did not hit her during a fight she had with him months before his death, Detective's Bazan's alleged tampering with evidence, and the impaneling of Juror Gjemnica do not establish Petitioner's factual innocence of capital murder. Aside from making conclusory assertions and citing testimony and evidence available at trial, he has failed to provide any newly discovered facts or evidence to show that he is factually innocent. He is not entitled to relief based on alleged actual innocence, and his claim should be denied.[22]

### XIII.  RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on

---

[22] In his state habeas application, Petitioner alleged actual innocence on different grounds than those raised in his § 2254 filings.  (*See* doc. 16-32 at 19.)  The state habeas court found that he "failed to present any new evidence not available at the time of trial" to support his actual innocence claim, and that he "failed to show by a preponderance of the evidence that but for a violation of the United States Constitution no rational juror could have found [Petitioner] guilty beyond a reasonable doubt." (doc. 16-34 at 20.)  The Texas Court of Criminal Appeals rejected the claim based on these findings when it denied the state habeas application. (*See* doc. 16-30.)  Petitioner has not shown that the state habeas court's rejection of this claim was unreasonable.

November 1, 2019 (doc. 3), should be **DENIED** with prejudice. The *Motion for Summary Judgment*, received on March 31, 2022 (doc. 57), should be **DENIED**.

        **SIGNED this 28th day of November, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

        A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE